# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: | ) |
| | ) Chapter 7 |
| DEAN E. FREED | ) |
| | ) Bankruptcy No. 18-01211 |
| Debtor. | ) |
| | ) |

## RULING ON OBJECTION TO HOMESTEAD EXEMPTION

This matter came on for telephonic hearing on Sanborn Savings Bank's Objections to Exemptions. Donald Molstad appeared for Debtor, Dean Freed ("Debtor"). Daniel Dekoter and Nathan Rockman appeared for Creditor, Sanborn Savings Bank ("Bank"). The Court took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## STATEMENT OF THE CASE

The Bank filed objections to Debtor's homestead exemption claim. The parties filed stipulated facts relating to the objections, to the exemptions, a stipulation regarding sale of the homestead, and an agreement to allow the sale proceeds to be held in escrow. The homestead was sold, expenses were paid, and the proceeds of $248,117.65 remain in escrow. The sole issue remaining is whether the future advance clause of the mortgage applies and fully secures the Bank to the net sale proceeds. Debtor claims he has an exemption in half of this amount while his ex-wife, Connie, claims the other half. Connie also disputes the

Bank's right to the funds. The Court agrees with the Bank that the future advance clause apply with full force and secures the additional amounts of the net sale proceeds under existing Iowa law.

## BACKGROUND AND FACTS

On September 7, 2018, Debtor, Dean Freed, filed a voluntary Chapter 7 Petition. The Petition claimed certain property as exempt. On December 7, 2018, secured Creditor Sanborn Savings Bank, filed an Objection to Exemptions. Debtor borrowed funds from the Bank personally, and the Bank had loaned Debtor funds on behalf of Debtor's business, Horizon Beef, Inc. ("Horizon"). Debtor is sole owner, chief officer, and principal director of Horizon.

The Bank executed four promissory notes to Debtor in the amount of $1,103,558.30. Three of the four promissory notes were made to Debtor and Horizon as co-debtors. Debtor defaulted on the loans to the Bank and both Debtor and Horizon filed separately for Chapter 7 bankruptcy protection. Debtor and his wife Connie were in the process of a divorce. Connie Freed is not a party in either bankruptcy.

The initial loan was No. 140440 executed September 15, 2014 in the amount of $384,775.13. It was used as a purchase money loan for real estate purchased as "Condominium Unit 404 in Building 1 of Vista Towers Condominium, 2908 West

37th Circle, Sioux Falls, South Dakota ("Real Estate")." See Exhibit E, Mortgage. The Real Estate was purchased for the couple's primary residence.

The fair market value of the Real Estate was approximately $722,000. There is no dispute that the Bank has the first mortgage on the property. The mortgage originally secured only the balance of the principal and interest of $384,775.13. The question between the parties is whether additional, later acquired debt is secured by the mortgage. The Bank argues the full value of the real estate is now subject to the mortgage because of further loans made to Debtor. The Bank claims the future advance clause, dragnet clause, and homestead waiver clause in all the loans provides its full security from the property.

The mortgage provided in relevant part:

> A. **Specific Debts.** The following debts and all extensions, renewals, refinancing, modifications and replacements: A promissory note or other agreement, dated September 15, 2014, from DEAN E. FREED (Borrower) to Lender, with a loan amount of $384,777.13.
>
> B. **Future Advances**. All future advances from Lender to DEAN E. FREED under the Specific Debts executed by DEAN E. FREED in favor of Lender after this Security Instrument. lf more than one person signs this Security Instrument, each agrees that this Security Instrument will secure all future advances that are given to DEAN E. FREED either individually or with others who may not sign this Security Instrument. All future advances are secured by this Security Instrument even though all or part may not yet be advanced. All future advances are secured as I made on the date of this Security Instrument…
>
> C. **All Debts**. All present and future debts from DEAN E. FREED to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt.

3

> If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument…

Exhibit E, Mortgage (with Future Advance Clause),

The mortgage also stipulates that the Freeds waived the right to claim any homestead exemption in real estate stating: **"WAIVERS**. Except to the extent prohibited by law, Mortgagor waives all appraisement and homestead exemption rights relating to the Property." See Id. at 7.

According to promissory notes executed between Debtor and the Bank, Debtor is indebted to the Bank in the amount of $1,103,558.30 as of October 4, 2019.  Promissory note No. 140440, executed on September 15, 2014 was a purchase money loan to purchase the Real Estate in the amount of $384,777.13. Loan No. 180136 was executed on April 9, 2018 in the amount of $369,000.  Loan No. 180137 was executed on April 9, 2018 in the amount of $298,986.82.  Loan No.180251 was executed on July 6, 2018 in the amount of $28,000.  Loan Nos. 180136, 180137, and 180251, were business loans extended to Debtor, personally, and to Horizon by the Bank totaling $693,986.82.

The Freeds disagree with the Bank that it can claim the funds under the future advance clause of the mortgage.  Debtor claims he has an exemption in half of the $248,117.65 of net proceeds while his wife, Connie, is owed the other half. In Debtor's original Bankruptcy Petition, he noted the difference between the fair

market value of the Real Estate and the "Maximum Obligation Limit" of the mortgage against the "homestead." Debtor claims that amount to be approximately $337,500. Debtor argues the value in the residence that exceeds the "Maximum Obligation Limit" of Note No. 144044 is not secured by the mortgage against the homestead. Thus, the full amount of the homestead is exempt.

## CONCLUSIONS OF LAW AND ANALYSIS

The issues in this case arise under, and at the intersection of, the exemption provisions of federal bankruptcy law and state law. The beginning point of the analysis is 11 U.S.C. § 522(b)(3)(A). That section permits a debtor to exempt from the bankruptcy estate:

> ... any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of filing of the petition at the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition, or if the debtor's domicile has not been located at a single State for such 730–day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730–day period or for a longer portion of such 180–day period than in any other place ...

Id. Iowa is an "opt-out" State, which means Iowa has elected to have exemptions apply in Federal Bankruptcy proceedings as specifically allowed by the Bankruptcy Code. In re Hurd, 441 B.R. 116, 118 (8th Cir. BAP 2010); Iowa Code § 627.10.

When a debtor claims an exemption, an interested party must object, or the exemption will be deemed approved by operation of law. In re Roberts, 443 B.R.

5

531, 537 (Bankr. N.D. Iowa 2010). The Bank has the burden to prove the exemptions are not properly claimed. Id. Debtor did not reside in Iowa during the 730–day period before filing bankruptcy and the property was located in South Dakota. However, the mortgage specifically required that Iowa law governs.

Debtor argues South Dakota law should apply because that is where the homestead is located. Under South Dakota law:

> If the homestead is divided by court order pursuant to § 25-4-44 and a lien is imposed on the homestead for the benefit of the nonoccupant spouse pursuant to § 25-4-42, absence from the homestead and loss of title to the homestead pursuant to the court order, does not constitute forfeiture of the homestead exemption and homestead protection shall attach to the judicial lien for a period of one year. Such exemption shall be limited to one hundred seventy thousand dollars for a homestead of a person seventy years of age or older or the unremarried surviving spouse of such person so long as it continues to possess the character of a homestead.

S.D.C.L § 43-45-3 (2).

The Bank argues that although the Real Estate in the mortgage is located in South Dakota, the mortgage specifically provided that the "security instrument is governed by the laws of **Iowa**, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law." Sanborn Savings Bank Brief, at 4. The Bank claims there is no requirement for South Dakota law to apply to determine the effect of the dragnet and future advance clauses.

6

The nature of this dispute concerns Debtor's liability under the security instruments. Although the property was in South Dakota, the mortgage documents required that Iowa law applies. The Court agrees with the Bank. Accordingly, Iowa law applies.

Under Iowa law, for a document or contract to affect a valid waiver of debtor's homestead exemption right it must, at minimum, contain a statement that debtor's homestead will be liable for debt while also referring to the specific homestead property. In re Hebert, 301 B.R. 19 (Bankr. N.D. Iowa 2003); see also Iowa Code Annotated § 561.16, 561.21. Iowa law favors homestead rights, and courts liberally construe homestead exemptions in favor of Debtors. Coyle v. Kujaczynski, 759 N.W.2d 637, 638 (Iowa Ct.App.2008); Gustafson v. Fogleman, 551 N.W.2d 312, 314 (Iowa 1996); In re Johnson, 880 F.2d 78, 83 (8th Cir.1989); In re Linman, No. 98–03770–S, slip op. at 3 (Bankr.N.D.Iowa Aug. 20, 1999).

Under limited circumstances, however, a homestead can be sold to satisfy debts. In re Wagner, No. 99-02428-C, 2000 WL 34585911, at *2 (Bankr. N.D. Iowa July 27, 2000). "The sale of a homestead is allowed under Iowa Code § 561.21 if the sale is conducted to satisfy debts which are created by written contracts when the contracts stipulate that the homestead should be liable." In re Wagner, 259 B.R. 694, 699 (B.A.P. 8th Cir. 2001).

7

Moreover, "Iowa Code sec. 561.21(2) allows the sale of a homestead to satisfy debts created by written contracts which expressly stipulate that the homestead is liable." In re Wagner, 2000 WL 34585911, at *2. As this Court noted in In re Vega, No. BR 15-00640, 2016 WL 1254663, at *4 (Bankr. N.D. Iowa Mar. 30, 2016), the Iowa Code provides a relevant exception to the general homestead rule:

> The homestead may be sold to satisfy debts of each of the following classes:
>
> (2) Those created by written contract by persons having the power to convey, expressly stipulating that it shall be liable, but then only for a deficiency remaining after exhausting all other property pledged by the same contract for the payment of the debt.

Iowa Code § 561.21(2) (emphasis added).

A homestead may be sold only after exhausting all other property pledged for payment of the debt. In re Wade, 354 B.R. 876, 882 (Bankr.N.D.Iowa 2006). "A mortgagor is required to satisfy mortgage debt from nonhomestead real estate before resorting to the homestead." Id. (citing Gaumer v. Hartford–Carlisle Savs. Bank, 451 N.W.2d 497, 501 (Iowa 1990)).

This Court has previously held that for a contract to satisfy Iowa Code § 561.2, the contract must also refer to specific homestead property. In re Hebert, 301 B.R. 19 (Bankr. N.D. Iowa 2003). Although the cases are not explicit on the

8

point, the best practice would be to do so by legal description. In re Timmer, 423 B.R. 870, 875 (Bankr. N.D. Iowa 2010).

Here, the sale of the homestead is being used to satisfy some of Debtor's debt and the mortgage specifically allowed for the homestead to be liable. This complies with Iowa Code § 561.21, and Iowa case law. Debtor's homestead can be used to satisfy debt owed to the Bank. The remaining questions are the effect of a future advance clause and a maximum obligation limit clause.

Dragnet and future advance "all debts" clauses are enforceable in Iowa. Freese Leasing Inc. v. Union Trust & Savings Bank, 253 N.W.2d 921, 925-26 (Iowa 1977); Poweshiek Cty. Sav. Bank v. Hendrickson, 699 N.W.2d 684 (Iowa Ct. App. 2005). Generally, future advance clauses are disfavored but nevertheless effective under Iowa Law. In re McMahon, No. BR 18-00443, 2018 WL 3014067, at *4 (Bankr. N.D. Iowa June 8, 2018). "Iowa views with disfavor the inclusion of future advances clauses within mortgages drafted by the lender, especially when those clauses are situated within the mortgage contract in such a way that lends itself easily to lender overreaching and surprise." Id. at *3; see also In re Simpson, 403 N.W.2d 791, 793 (Iowa 1987) (stating "[t]ypically, the fine print future advances clause buried in a security agreement will not convey the broad scope of its coverage to the borrower"). "Even though ... future advances clauses are valid, we have indicated that these clauses are adhesion contracts and are construed

9

against the writer." Nat'l Loan Inv'rs, L.P. v. Martin, 488 N.W.2d 163, 166 (Iowa 1992).

The Iowa Court of Appeals specifically noted in a situation similar to this one—when a future advance can apply:

> The language of the future advances clause applies to any future advances under any promissory note, and specifically disavows any relatedness requirement. The clause also rejects any requirement the mortgage be specifically referenced in a future note. The clause is broad in its scope, and is not buried in the document in a way that might be misleading or allow for surprise. The title of the mortgage itself, as an "open-end real estate mortgage" alerts any reader to the presence of a future advances clause and the possibility of later loans being superior, further minimizing the risk of surprise. The parties clearly stated their intent to cover such notes in the future advances clause.

Wells Fargo Bank, N.A. v. Valley Bank & Tr., 839 N.W.2d 675, 2013 WL 4767889 at *2 (Iowa Ct. App. 2013).

This case is like Wells Fargo and this Court's ruling in McMahon. The future advance clause in the mortgage is clearly written across the top of the mortgage: "MORTGAGE with future advance clause." See Wells Fargo Bank, N.A. v. Valley Bank & Tr., 839 N.W.2d 675, 2013 WL 4767889 at *2; In Re McMahon, 2018 WL 3014067 at *3. Therefore, Debtor had clear notice of the future advance clause.

Debtor also argues that even if the future advance clause is effective, the "Maximum Obligation Limit" applies. In McMahon, this Court was faced with

10

substantially the same issue.  See In Re McMahon, 2018 WL 3014067 at *3.  The McMahons owed the bank two million under three notes.  Id. at *1.  The McMahons' bank had a mortgage on their homestead and rental property each containing a future advance clause.  Id.  The McMahons argued that the future advance clauses were limited by the "Maximum Obligation Limit" amount in the mortgages.  Id.  The McMahons' bank argued that the future advance clauses fully and totally encumbered the mortgaged properties and the maximum obligation limit—real properly—did not prevent the full encumbrance.  Id.  This Court agreed with the bank and held that the future advance clause secured all of McMahon's debt.  Id. at *4.  This Court noted that Debtor's argument was not entirely without logical appeal, but also noted that in Wells Fargo there was a "Maximum Obligation Limit" that did not negate the future advance clause applied.  Id.   This Court concluded under Wells Fargo that: "Under Iowa Law, the 'Maximum Obligation Limit' does not limit the reach of a future advance clause as Debtors suggest.  Instead, such clause appears to limit the amount of debt that will be senior to another security interest, not the total amount of collateral available to the Bank in a situation like this."  In Re McMahon, 2018 WL 3014067 at *4.

In McMahon, this Court did discuss Judge Vogel's dissent in Wells Fargo.  See Id.  Judge Vogel's dissent focused on the language of the clause: "The total principal amount of the Secured Debt ... secured by this Mortgage **at any one time**

11

**shall not exceed the amount stated above**." Wells Fargo Bank, N.A. v. Valley Bank & Tr., 839 N.W.2d 675, 2013 WL 4767889 at *3 (Vogel, J., dissenting) (emphasis in original).  The dissent continued:

> The majority focuses on the later language of the mortgage, paragraph four, and concludes this paragraph creates an expansive security interest under its "dragnet clause," regardless of the nature of the future advancement.
>
> In doing so, the "maximum obligation limit" clause is obscured. "Dragnet clauses are not favored in equity. Our cases say they should be carefully scrutinized and strictly construed." Freese, 253 N.W.2d at 925.  However, while the future advances clause here does not restrict the type of loan the mortgage could secure, the plain language of the maximum obligation limit clause restricts other debt that could be secured by the mortgage.

Id. at *4 (Vogel, J., dissenting).  As this Court stated in McMahon, as appealing as an argument there is "no Iowa case so holding — and the thought-provoking dissent thus does not control." In Re McMahon, 2018 WL 3014067 at *4.  Here this Court will go one step further.  The thought-provoking dissent is probably a better and more accurate assessment of what the law should be.  However, this Court is not free to re-write Iowa case law.

Here, the Court thus must agree with the Bank.  It's clear in Wells Fargo and McMahon, that future advance clauses can be effective even with a "Maximum Obligation Limit" language limiting the "total principal amount of the Secured Debt" to the amount in the mortgage. See Id.; see also Wells Fargo Bank, N.A. v. Valley Bank & Tr., 839 N.W.2d 675, 2013 WL 4767889 at *3.

12

Therefore, the future advance clause of the Bank's first mortgage is effective. The future advance clause of the Bank's first mortgage captures the debt in excess of the original "face" amount of that mortgage. Debtor cannot claim any exempt value in the Real Estate. Thus, the future advance clause of the first mortgage secured the additional amounts of the net sale proceeds, and Debtor cannot claim homestead exemption in any amount in the mortgaged property.

## CONCLUSION

**WHEREFORE**, the future advance clause of the first mortgage secured the additional amounts of the net sale proceeds.

**FURTHER**, the homestead proceeds will not be exempt regarding the Debt owed to Sanborn Savings Bank.

Dated and Entered:   April 24, 2020

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE